The Atchison, Topeka & Santa Fé Railroad Company v. N. A. Benton.

1. Specific Performance — *Vendor — Purchaser — Necessary Party.* Where an action is brought for the specific performance of a written contract to convey real estate, and prior to the commencement of the action the vendor has sold and conveyed the legal title to a subsequent purchaser, such purchaser is a necessary party to the action, and a decree for a specific performance against the vendor without making such a purchaser a party, is erroneous.

2. Notice *to General Attorney, When Notice to Company.* A notice to the general attorney of a railroad company relating to matters connected with its land department, before any action is brought against the company, is not notice to the land department or to the company unless the general attorney has been given special charge of the subject-matter of the notice.

*Motion for Rehearing.*

This case was assigned for hearing at the March sitting of this court for 1889.    The case was referred to and heard before the commission; Holt, C., preparing the report.    Upon the recommendation of the commission, the judgment of the district court was affirmed.    The following is the syllabus of the report:

"1. Where a party purchases from another and has transferred to her a contract for the sale of land, made by a railway company, but gives the contract to the party from whom she purchased for safe-keeping, as her agent, and he sells and as-

signs it without her knowledge or consent, and she subsequently brings suit against her agent and the company for the land, in the county where the land is situated, and also gives notice to the general attorney of the company of her claim, the company has notice of her rights to and interest in the land, although service upon it in the action brought by her was defective. After the notice had been given and the action brought, the company executed a deed to the holder of the contract, upon presentation and payment of the unpaid portion of the purchase-money; there was a provision in the contract that no assignment should be valid unless it was indorsed thereon, and that the company had the right to convey the land upon presentment of the contract and payment of the unpaid portion of the purchase-money. *Held*, That the stipulation in such contract was no defense against her claim after notice.

"2. The railway company has no cause for complaint because the subsequent holders of the contract of sale and the party to whom the company executed a deed were not made defendants in the action, when with full knowledge of all the circumstances it failed to ask to have them made parties."

On October 7, 1889, the railroad company filed its motion for rehearing, a copy of which motion, omitting caption, is as follows:

"Comes now the above-named plaintiff in error and moves the court to grant a rehearing in the above-entitled cause, and that the judgment heretofore rendered by said court be set aside and reversed, because said judgment is erroneous and contrary to law, and for the reason that the opinion of the commissioners upon which said judgment was rendered contains errors of law and of fact, and does not dispose of the questions raised in the brief of plaintiff in error, heretofore filed in said cause."

The original petition, filed on the 12th day of June, 1882, omitting caption, is as follows:

"The plaintiff states that, on or about the 8th day of July, 1881, the defendant, the Atchison, Topeka & Santa Fé Railroad Company, was the owner in fee simple of the following-described real estate, lying and situated in the county of Sedgwick and state of Kansas, to wit: the south half of the northwest quarter of section one, in township twenty-six south, range one east; that on or about the 8th day of July,

1881, the said defendant, the Atchison, Topeka & Santa Fé Railroad Company, entered into a contract and agreement in writing with M. S. Sproules, in and by the terms of which said agreement it was contracted and agreed that the said Atchison, Topeka & Santa Fé Railroad Company, upon the payment of the sum of one thousand dollars by the 15th day of May, 1882, should execute and deliver to the said M. S. Sproules a good and sufficient deed to said real estate; that on or about the 8th day of July, 1881, the said M. S. Sproules, for a valuable consideration, under his hand, duly assigned the said contract and all his right and interest therein to the defendants, A. H. McKee and H. W. Stewart, and then and there delivered said contract to the defendants, McKee and Stewart; that on or about the 8th day of July, 1881, the said A. H. McKee and H. W. Stewart entered into an agreement with the plaintiff whereby it was contracted and agreed that upon the payment to the said McKee and Stewart of the sum of twenty-five dollars and the delivery to them of a good and sufficient deed to a certain tract of land containing eighty acres, in the state of Missouri, they, the said defendants, McKee and Stewart, should assign, transfer and set over to the plaintiff all their right and interest under said contract assigned to them as aforesaid by the said M. S. Sproules; that upon the execution of said agreement the plaintiff, in pursuance thereof, executed and delivered to the defendants, McKee and Stewart, a good and sufficient deed to said land situated in the said state of Missouri, and then and there paid in cash to the said McKee and Stewart the sum of $25; whereupon the said McKee and Stewart executed and delivered to the plaintiff their certain instrument in writing, as follows:

"'WICHITA, KANSAS, July 8, 1887.— Received of Mrs. N. A. Benton, twenty-five dollars, to apply on contract No. 4528, A. T. & S. F. R. R. land, situate in Sedgwick county, Kansas.     McKEE & STEWART.'

That the land mentioned and referred to in said instrument of writing is the same mentioned and described in the contract aforesaid, between the said Atchison, Topeka & Santa Fé Railroad Company and the said M. S. Sproules; that the plaintiff has paid to the said Atchison, Topeka & Santa Fé Railroad Company, under his contract, the entire purchase-money of said land, excepting the sum of $68.15; that the said McKee and Stewart, after receiving the deed to the said land, in the state of Missouri, and the said sum of $25, then and ever since have refused and neglected to assign and deliver said contract mentioned in said instrument of writing to

the plaintiff, and now withhold the same from the plaintiff,
and threaten and are about to transfer and assign the same to
some person or persons who have no right to the same; that
the plaintiff has always been ready to pay the said the Atchi-
son, Topeka & Santa Fé Railroad Company the sum of $68.15,
and now offers to pay the same into court under said contract,
and as thereby stipulated and required.

"Wherefore, the plaintiff demands judgment herein, that
there be an accounting between the said Atchison, Topeka &
Santa Fé Railroad Company and the plaintiff, and the amount
due under said contract be ascertained, and that whatever
amount may be found due, the plaintiff be permitted to pay;
and that upon the payment of all sums of money due upon
and under said contract to the person entitled to receive the
same, that it be decreed by the court that the Atchison, To-
peka & Santa Fé Railroad Company execute to the plaintiff
a good and sufficient deed to said real estate; and the plaintiff
demands that the defendants McKee and Stewart be barred
of all right and interest in said real estate, and be compelled
to bring into court the said contract between the defendant
the Atchison, Topeka & Santa Fé Railroad Company and the
said M. S. Sproules, and surrender the same to plaintiff. The
plaintiff demands all such other relief as she may be entitled
to in the premises."

A. H. McKee and H. W. Stewart answered as follows:

"For their answer and defense to this action the defendants
McKee and Stewart allege, that when the defendant McKee
made the agreement with the plaintiff to assign to her the con-
tract set forth and described in her petition, said plaintiff was
to pay the installment of money due on said contract which
fell due on or about the 15th day of May, 1882, in amount
about $70, and defendant so notified plaintiff; that by reason
of plaintiff's failure to pay said May 1882 installment of
money, the defendant was obliged to and did pay the same or
forfeit the amount already paid; that being unable to hear
from the plaintiff, and regarding the plaintiff as having for-
feited her rights in the matter, this defendant, McKee, on or
about the 24th day of December, 1882, assigned and sold all
of said defendants McKee's and Stewart's interest in and to
said Atchison, Topeka & Santa Fé Railroad contract to one
Davis, who is now the owner of the same in good faith; that
said contract has passed out of possession of these defendants,
and they have no further rights or interest therein; all of

which the defendants allege they are ready and willing to make appear; and they pray that they may go hence with their costs."

On March 17, 1886, the railroad company with the permission of the court filed the following answer, omitting caption:

"Now comes the defendant, the Atchison, Topeka & Santa Fé Railroad Company, and by permission of the court heretofore obtained, files this, its answer to the plaintiff's petition in the above-entitled suit:

"1. This defendant says that on and prior to the 15th day of May, 1877, it was the owner in fee simple of the south half of the northwest quarter of section number one, in township number twenty-six south, of range number one east, in the county of Sedgwick, in the state of Kansas; that on the 15th day of May, 1877, it made and entered into a written contract with one Martin S. Sproules, a copy of which written contract is hereto attached, marked 'Exhibit A' and made a part of this answer, by the terms of which contract it agreed to sell and convey to the said Martin S. Sproules, or his assigns, all of said premises, upon the compliance of the conditions contained in said contract; that afterward, to wit, on the 18th day of June, 1880, said Sproules, for a valid consideration, assigned all his right, title and interest in and to said contract and in and to the lands therein described, to A. Hagerty McKee, which assignment was on said day duly acknowledged, a copy of which assignment and acknowledgment is hereto attached and made a part of this answer, and marked 'Exhibit B'; that afterward, on the 24th day of December, 1881, A. Hagerty McKee and Amanda McKee his wife, for a valid consideration, duly transferred and assigned all their interest in and to the said contract and the lands described therein, to Walter B. Davis, which assignment was duly acknowledged on the 12th day of July, 1882, a copy of which assignment is hereto attached and made a part of this answer, and marked 'Exhibit C'; that afterward, to wit, on the 28th day of March, 1884, said Walter B. Davis, for a valid consideration, duly transferred and assigned all his interest in and to said contract and the lands therein described, to Andrew Morris, which assignment was duly acknowledged the 28th day of March, 1884, a copy of which assignment and acknowledgment is hereto attached, made a part of this answer, and marked 'Exhibit D'; that afterward, to wit, on the

17th day of August, 1885, said Andrew Morris, for a valid consideration, sold, assigned and transferred all his right, title and interest in and to said land contract and the lands therein described, to Philip S. Doerr, which said assignment was duly acknowledged on the 17th day of August, 1885, a copy of which assignment and acknowledgment is hereto attached and made a part of this answer, and marked 'Exhibit E.'

"This defendant further says, that said A. Hagerty McKee, Amanda McKee, Walter B. Davis and Andrew Morris were each and all innocent purchasers for value of the interest assigned to them in said lands and said land contract, as hereinbefore set forth, without notice of any legal or equitable title or interest in or to the same in said plaintiff.

"This defendant further says, that in accordance with the provisions of said contract and the said several assignments, upon the terms of said contract being fully complied with by said M. S. Sproules and the said several assigns hereinbefore mentioned, it did, on the 17th day of August, 1885, make, execute and deliver to said Philip S. Doerr its deed of conveyance to all its right, title and interest in and to said premises described in plaintiff's petition, as under the terms of said contract it was bound to do, and that it now has no interest in said premises.   This defendant denies that it at any time had any knowledge of any interest, legal or equitable, owned or claimed by said plaintiff in the premises described in plaintiff's petition, paramount to the interest of said Walter B. Davis and his assigns, as hereinbefore set forth, or any interest which in law or equity could or should prevent this defendant from completing and carrying out the terms of said land contract hereinbefore mentioned; and it denies having at any time received from said plaintiff any moneys as part payment for said lands.

"2.  For a second and further defense, this defendant says that there is a defect of parties defendant in said suit, and that Amanda McKee, Walter B. Davis, Andrew Morris and Philip S. Doerr are necessary parties to a final and complete determination of the same, for the reasons set forth in the first count of this answer, which by reference is hereby made a part of this second count of this answer.   Wherefore, this defendant demands judgment for costs."

The written contract, referred to in the answer as an exhibit, contained among other things the following provision:

"And it is further stipulated that no assignment of the prem-

ises shall be valid unless the same shall be indorsed hereon, and that no agreements, conditions or relations between the second party and his assignee, or any other person acquiring title or interest from or through him, shall preclude the parties of the first part from the right to convey the said premises to the second party or his assigns, on the surrender of this agreement and the payment to the trustees aforesaid of the unpaid portion of the purchase-money for said land."

The written assignments of the written contract between the railroad company and Martin S. Sproules, referred to in the answer as exhibits, were also attached thereto as stated. The plaintiff filed a reply, which was not verified. It alleged, among other things, that the title of the real estate described in the petition was in the railroad company at the commencement of the action. Judgment was rendered by the district court in favor of N. A. Benton against the railroad company as prayed for in her petition. The *Company* excepted, and has brought the case here for review.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Hatton & Ruggles,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: A reëxamination of the pleadings in this case shows that a part of the answer of the railroad company was unintentionally overlooked. The second defense alleges that—

"There is a defect of parties defendant in said suit, and that A. H. McKee, Walter B. Davis, Andrew Morris and Philip S. Doerr are necessary parties to a final and complete determination of the same, for the reasons set forth in the first count of this answer, which by reference is hereby made a part of this count of the answer."

It appears from the pleadings that on the 8th day of July, 1881, the Atchison, Topeka & Santa Fé Railroad Company entered into a written contract with M. S. Sproules, by the terms of which it was agreed that the railroad company, on

payment of the sum of $1,000, by the 15th day of May, 1882, should execute and deliver to Sproules a good and sufficient deed to the real estate therein described; that on the 18th day of June, 1880, Sproules, for a valuable consideration, assigned in writing the contract and all his interest therein to A. H. McKee, and delivered said contract to McKee; that on the 24th day of December, 1881, McKee, for a valuable consideration, assigned in writing said contract and all his interest therein to Walter B. Davis, and delivered said contract to Davis; that on the 28th day of March, 1884, Walter B. Davis, for a valuable consideration, assigned said contract in writing and all his interest therein to Andrew Morris, and delivered said contract to Morris; that on the 17th day of August, 1885, Morris, for a valuable consideration, assigned said contract and all his interest therein to Philip S. Doerr, and delivered said contract to Doerr; that on the 17th day of August, 1885, the railroad company executed and delivered to Doerr its deed of conveyance to all its right, title and interest in the premises.

Mrs. N. A. Benton, sometime in 1880, entered into an agreement with McKee and Stewart that upon the payment to them of $25, and the delivery to them of a good and sufficient deed to certain land in Missouri, they would transfer and assign to her all their right and interest in said written contract; that plaintiff executed to McKee and Stewart a good and sufficient deed to the land in Missouri, and also paid them $25, and thereupon McKee and Stewart executed to her the following receipt:

"WICHITA, KANSAS, July 8, 1881.—Received of Mrs. N. A. Benton, twenty-five dollars, to apply on contract No. 4528, Atchison, Topeka & Santa Fé Railroad land, situate in Sedgwick county, Kansas.              McKEE & STEWART."

But McKee and Stewart did not assign in writing, or deliver the written contract obtained from Sproules to Mrs. Benton. The railroad company did not file its answer until the 17th day of March, 1886, and the action was not commenced against the railroad company until the filing of its answer, because

the service attempted before that time was insufficient and void. Therefore, at the time this action was commenced against the company, the company had executed and delivered to Doerr its deed, on the 17th of August, 1885, of the premises described in the petition. At the time that the first judgment rendered against the railroad company was set aside for want of service, the plaintiff agreed with the railroad company that it might file an answer to relate back to the commencement of the action. (*Miller v. Kershaw*, 1 Bailey's Eq. 479; *Weeks v. Tomes*, 16 Hun, 349; *Kellogg v. Fancher*, 23 Wis. 1.) This, however, did not change the commencement of the action, or the *lis pendens*. The answer was filed about the time of this stipulation. Therefore the stipulation and the answer were the first appearance of the railroad company.

Under this state of facts, the plaintiff was not entitled to a decree against the railroad company, because all the necessary persons had not been made parties to the action. It is a general rule in equity pleading that all persons whose interest is to be affected by a suit are necessary parties to it. Even if the subsequent assignees of the written contract were not necessary parties, yet Doerr should have been made a party defendant, as he was the holder of the legal title of the premises in dispute, and if he was not an innocent purchaser, he might have been declared the trustee of the legal title for the benefit of the plaintiff. Where a land contract has been assigned, the last assignee who claims the contract and the title to the land therein described, should be joined with the vendor in an action for specific performance brought by a prior assignee of the contract.

1. Specific performance—vendor—purchaser—necessary party.

(*Estill v. Clay*, 2 A. K. Marsh. 497; *Allison v. Shilling*, 27 Tex. 460; *Railroad Co. v. Wilhelm*, 33 Kas. 206.)

In the case of *Hare v. L. & N. W. Rly. Co.*, 1 Johns. & Hem. 252, Vice-Chancellor Wood says:

"If I allow the suit to proceed in the absence of any of the other companies, any of the decrees which I might make would not bind them, and the defendants might become liable in damages for obeying the order of the court."

Further, prior to the execution of the deed by the railroad company to Doerr, the company had no notice of the assignment of the written contract to Mrs. Benton. When Doerr presented the contract properly assigned in writing to him and tendered the money due thereon, in the absence of notice to the contrary it was the duty of the railroad company to execute its deed to Doerr. It appears that on July 10, 1882, Sluss & Hutton, the attorneys of Mrs. Benton, wrote to George R. Peck, Esq., general attorney of the railroad company, of Mrs. Benton's claim. At that time, as no valid service had been made upon the railroad company, no action was pending against the company; therefore the notice to the general attorney of the company was not notice to the company for any purpose whatever. An attorney cannot, under his general authority, accept service for his client of the original process by which the action is begun. The principles upon which the authorities supporting this rule rest are:

"That it is no part of the duty of an attorney, nor within the scope of his authority, to admit of service for his client, of the original process by which the jurisdiction of the court over the person of the client is first established, for until that be done the relation of client and attorney cannot begin; nor can it be created by the act of the attorney alone." (*Starr v. Hall*, 87 N. C. 381.)

Notice to the attorney, whether actual or implied, is considered notice to the client, and the latter is bound; but this notice cannot be given until the action is commenced in the court, or the attorney has been given charge of the subject-matter of the litigation. The client is not bound, if the notice is received by his general attorney in a transaction over which the attorney has no control, and which at the time of the notice is not in litigation. Until the voluntary appearance of the railroad company in the court below, this action was not pending against it, as the defective service was not notice to it. Nor did such service bring it within the jurisdiction of the court. The general attorney of the company, prior to the stipulation and answer heretofore referred to, had nothing

whatever to do with the action or the claim of Mrs. Benton. It is well known that a great railroad company, like that of the Atchison, Topeka & Santa Fé, has many separate departments or bureaus — such as the land department, the passenger department, the freight department, the construction department, etc. At the head of each of these departments there is a managing officer, who has charge of the business of that department. Before any legal proceedings are commenced, the business of each department is under the control of the chief of that department, subject to the direction and supervision of the president or general manager. Any matters requiring legal attention or advice are referred to the general attorney by the department having special charge thereof, or by the president or general manager; but prior to the commencement of an action in a court against the company, notice to the general attorney of the matters solely under the control

2. Notice to general attorney, when notice to company. of another department is not notice to that department or to the company, unless prior to such notice the attorney has been directed to take charge of the subject-matter of the notice. After an action has been properly commenced against the company, then notice upon its general attorney would be notice to the company, and therefore valid and binding.

The judgment heretofore rendered in this court will be set aside, the judgment of the district court will be reversed, and the cause remanded for further proceedings, in accordance with the views herein expressed.

All the Justices concurring.