EDGAR BECK, *Plaintiff and Appellant,*

vs.

WILLIAM J. ADAMS, *Defendant and Respondent.*

(No. 2338; November 12th, 1946; 174 Pac. 2d 134)

For the plaintiff and appellant the cause was submitted on the brief of W. M. Haight of Riverton, Wyoming.

For the defendant and respondent the cause was submitted on the brief of Carl L. Sackett, United States Attorney, and John C. Pickett, Assistant United States

Attorney, both of Cheyenne, Wyoming, and David L. Bazelon, Assistant Attorney General, Roger P. Marquis and George S. Swarth, Attorneys Department of Justice, Washington, D. C.

## OPINION

RINER, Justice.

In this case Edgar Peck, as plaintiiff, brought an action in the District Court of Carbon County, against William J. Adams, as defendant, asking that specific performance of an alleged option agreement to purchase real estate contained in a lease given by Adams to Fred P. Hannan and by him thereafter assigned to Beck, be granted the latter. The district court sustained a motion of the defendant for judgment on the pleadings of the parties and dismissed the action. The plaintiff reserving proper exception to this judgment has brought the record here for review. The parties will usually be referred to hereinafter as aligned in the district court or by their respective surnames. The pleadings of the parties are substantially as follows:

Plaintiff's petition, filed November 26, 1943, sets out its allegations in five numbered paragraphs the first of which avers that the defendant was, on or before the 16th of December, 1938, the owner of:

"Allotment No. 819
South Half of Southwest Quarter (S½SW¼) and

Lots Nine (9) and Ten (10), of Section Fourteen (14), Township Two (2) North, Range One (1) East, Wind River Meridian."

Paragraph "2" of the said petition alleges that on the date last above mentioned the defendant leased to Hannan, by an instrument in writing for the term of five years thereafter, all the above described real estate at a fixed annual rental; that the lessor reserved the right to sell the land at any time; that "in case of sale" he gave "Hannan the option to purchase the said land at the agreed price"; that a copy of the written lease was attached to the petition as Exhibit A and made a part of the pleading; that this lease was recorded in the office of the county clerk of Fremont County, Wyoming, December 28, 1938. The attached written lease shows the option to purchase given by the lessor to the lessee in the language quoted above. The second paragraph then continues in its second subdivision by alleging that November 12, 1940, Hannan executed on the original lease a written assignment to the plaintiff Beck and that the instrument was re-recorded April 2, 1941; that plaintiff is now in possession and is the owner of said lease entitled to all the rights of the original lessee. The third subdivision of the second paragraph aforesaid sets out that the written lease contains an error in the description of the leased land, the S½ of the SW¼ being written therein as the S½ of the SE¼. However, the allotment number is correctly given in the lease and the parties evidently regarded it merely as a clerical error as it is admitted that the land included in allotment "819" was the land owned and lease by the defendant.

Paragraph numbered "3" of plaintiff's petition alleges that a short time prior to December 5, 1941, he was informed that the defendant had received an offer from the United States Indian Service, Department of the Interior, to purchase said lands for the sum of

$261.30; that on the date last mentioned he paid the advance annual rental and at the same time advised the defendant that he, Beck, claimed the right to meet any purchase offer which the defendant might receive; that on January 14, 1942, plaintiff advised defendant that said plaintiff desired to meet this price offered by the United States Indian Service, as stated above, and requested the defendant to send warranty deed and an abstract of title to some person, attorney or bank in Fremont County, Wyoming, to hold in escrow until the plaintiff "put up" the purchase price; or that defendant could bring the papers to Riverton, Wyoming, himself, and plaintiff would immediately pay him this amount.

The 4th paragraph pleads that plaintiff has performed all of the conditions required of him by said lease and said option therein; that he has demanded a conveyance of the said premises from the defendant but that the defendant refuses to execute same.

The 5th paragraph asserts that he has deposited with the clerk of the district court $261.30 in lawful money of the United States, the reasonable value of said lands which is the offer which has heretofore been made by the United States to said defendant for said lands.

Plaintiff's prayer for relief asked that:

"the defendant may be required to receive the said sum of $261.30 so brought into court and deposited with the clerk of this court, and to specifically perform the said agreement on his part by executing and delivering to plaintiff a good and sufficient warranty deed conveying unto said plaintiff the lands described herein to wit:"

The lands aforesaid are then described and the prayer continues:

"that the plaintiff may have such other and further relief as to the court may seem just and equitable in

the premises, and that the plaintiff recover his costs herein."

December 27, 1943, defendant's then attorney, Eph U. Johnson, filed a general denial as an answer to this petition. That same day a written stipulation appears to have been filed in the office of the clerk of the district court signed by plaintiff's counsel and other counsel for the defendant, John C. Pickett, agreeing that the defendant might have to and including February 5, 1944, in which to "answer or plead otherwise to the petition of the plaintiff filed herein". February 2, 1944, defendant's counsel who had signed the written stipulation aforesaid filed a demurrer to plaintiff's petition upon two grounds, viz., that the petition failed to state facts sufficient to constitute a cause of action against the defendant and that there is a defect in parties defendant. This demurrer was filed also by Carl L. Sackett as associate attorney for defendant. February 11, 1944, plaintiff filed a motion to strike defendant's demurrer aforesaid because the defendant had theretofore filed his answer, the cause was at issue and the demurrer was "improper and out of time." March 18, 1944, Johnson withdrew his appearance as counsel for plaintiff, and on that date Carl L. Sackett and John C. Pickett as counsel for defendant requested leave by motion to withdraw the answer filed by Johnson, as stated above, and that the demurrer of defendant be considered by the court. As grounds of this motion it is stated in substance that Johnson was employed by the defendant to represent him in the case simply to prevent a default for want of answer and without knowledge that the superintendent of the Wind River Agency at Fort Washakie had made arrangements for Mr. Sackett and Mr. Pickett, the United States attorney and his assistant, for the District of Wyoming, respectively, to act as defendant's counsel for the reason that the defendant was an Indian and that the in-

terests of the United States were involved; that these attorneys secured the stipulation and filed the demurrer aforesaid not knowing of the filing of the answer under date of December 27, as recited above; that this answer was filed through a misunderstanding between the defendant and the Indian Agency, aforesaid, concerning the matter of representation by counsel of defendant in this litigation.

Thereafter the district court, after hearing had, by its order dated September 7, filed September 9, 1944, overruled plaintiff's motion to strike the defendant's demurrer and gave leave to defendant to withdraw his answer filed December 27, 1943; by another order dated and filed the same day as that last mentioned defendant's demurrer was overruled and defendant given until October 5, 1944, in which to answer plaintiff's petition; plaintiff was allowed also to and including October 18, following, to reply thereto. Plaintiff saved his exceptions to both of these orders.

October 3, 1944, pursuant to the order, aforesaid, the defendant filed an answer incorporating therein three alleged defenses, the first of which admitted the truth of the allegations of paragraph No. "1" of plaintiff's petition, and the execution of the lease described in said petition in paragraph No. "2" thereof, and denied all the remaining averments in said paragraph No. "2". His second defense pleads that on June 26, 1940, the defendant offered to sell the lands aforesaid to the United States for $261.30; that this offer was accepted, and on April 24, 1941, the defendant executed and delivered to the United States his warranty deed to said lands which conveyed them in trust for the Shoshone and Arapahoe Tribes of Indians of the Wind River Reservation; and that this deed was recorded in the county clerk's office of Fremont County, Wyoming, December 26, 1941, and that defendant does not now

have title to said lands and has no further interest therein. Defendant's third defense was that plaintiff had full and complete knowledge of all the averments in plaintiff's second defense and neglected and failed to exercise the lease option, aforesaid, within a reasonable time in the manner required by law and said lease, and therefore waived any and all rights which might have accrued thereunder.

Plaintiff's reply denied that plaintiff has no further interest in said lands because said deed from the defendant to the United States was without consideration and so was void; the other allegations contained in the second defense of defendant's answer were admitted. The averments of the third defense of defendant's answer were denied and it was asserted that " as promptly as possible after obtaining information regarding the proposed sale by the defendant to the United States" he notified the defendant that he desired to exercise the lease option, aforesaid, and has been, at all times, willing and able to exercise said option. All allegations of the answer not admitted by the reply were denied.

With the pleadings framed, as above described, on July 13, 1945, the defendant filed his motion for judgment thereon upon grounds substantially summarized, as follows: That plaintiff's petition fails to state a cause of action for specific performance against the defendant; that the pleadings, aforesaid, show that title to the land in question is in the United States, that it is an indispensable party to the action and that a decree for specific performance as prayed for by the plaintiff could not be given; and that the real party in interest is the United States of America and the court has no "jurisdiction to render judgment in the case".

The motion last mentioned was considered by the court after argument by counsel for the parties and it

was found that "title to the lands described in plaintiff's petition was at the commencement of this action and now is in the United States of America in trust for the Shoshone and Arapahoe Tribes of Indians of the Wind River Reservation, Wyoming, and that the United States of America is a necessary and indispensable party to the action and that said motion should be sustained." Accordingly a judgment was rendered that plaintiff's petition be dismissed and that plaintiff take nothing by his action as hereinabove indicated. This judgment was entered July 28, 1945.

The first point urged by the plaintiff, appellant here, is that the court erred in overruling plaintiff's motion to strike defendant's demurrer and also in sustaining the application of the defendant to withdraw the first answer filed by him as stated above. We are unable to see that there was error prejudicial to plaintiff in this ruling. His counsel signed a written stipulation granting the defendant until February 5, 1944, to "answer or plead otherwise to" plaintiff's petition. The defendant's demurrer was filed February 2, 1944, and within the time agreed upon by counsel. Thereafter this demurrer was overruled and the defendant, by leave of court, filed an answer which more completely set forth his defenses to the action than did the first answer filed by counsel who subsequently withdrew from the case. We see nothing prejudicial to plaintiff's rights in the court's action in these respects concerning which complaint is made. No authorities are cited by the appellant in support of this ground of appeal.

The rule is, says 41 Am. Jur. 511, § 318:

"Withdrawal of pleadings is a subject closely akin in many respects to that of amendment, for it is concerned with alterations in the record and their effect on the rights of the adverse party, and, as a general rule, is a question addressed to the reasonable discretion of the

court. In the exercise of such discretion, courts may allow the withdrawal of statements mistakenly made in pleadings, or the withdrawal of particular pleas or of entire pleadings as the exigencies of the case warrant." Of similar purport is 49 C. J. 660, § 935, and extended list of cases cited.

And 49 C. J. 685, § 974, citing many authorities states that "The granting or refusing of a motion to strike out pleadings is within the sound discretion of the court".

We can perceive no abuse of judicial discretion on the part of the district court in the case at bar either in refusing to strike the defendant's demurrer when plaintiff's counsel had expressly agreed that it might be filed or in allowing the defendant to withdraw his first answer and refile it in more elaborate form as reviewed above, the case not being on trial or even set for trial. Our code of civil procedure contemplates that "defendant may set forth in his answer as many grounds of defense * * * as he has". § 89-1015, W. R. S. 1931.

The second point advanced by the appealing party is that there was error on the part of the district court in sustaining the defendant's motion for judgment on the pleadings. In this we are also obliged to conclude that plaintiff is mistaken.

The prayer of his petition for relief has been recited above. Yet the pleadings disclose that Adams, on April 24, 1941, conveyed the title to these lands to the United States by warranty deed duly recorded on December 26, of that year. The instant suit was not brought until November 26, 1943. At that time the legal title to the lands was in the United States and had been so for more than two years. Of this fact plaintiff was aware when he brought this proceeding. The relief sought

against Adams by plaintiff was obviously quite impossible to be granted.

The rule as stated by Mr. Pomeroy (Pomeroy's Specific Performance of Contracts, Third Ed., 985, § 493) is:

"All person having or claiming an interest in the land derived from the vendor after the contract and with notice thereof, are necessary defendants in a suit brought by the vendee or his representatives. If the vendor, subsequent to the contract, conveys or contracts to convey the subject-matter to a person who has notice of the original contract, such grantee or second vendee is bound, as has been already shown, to perform, and is of course, a necessary party defendant."

The learned author is supported in this view by numerous appellate court rulings cited which would only lengthen this opinion to review here.

James on Option Contracts 618, § 1242, says quite properly: "The person who holds the legal title is a necessary party in order to give the court power to grant the relief."

The Supreme Court of Kansas, in Atchison, Topeka & Santa Fe R. Co., v. Benton, 42 Kan. 698, 22 Pac. 698, held in accord with these statements of the law that where an action is brought for the specific performance of a written contract to convey real estate and, prior to the commencement of the action the vendor has sold and conveyed the legal title to a subsequent purchaser, such purchaser is a necessary party to the action and a decree for a specific performance against the vendor without making such purchaser a party, is erroneous. See also Jurgensen v. Morris, 194 App. Div. 92, 185 N. Y. S. 386.

Inasmuch as the United States of America now holds the legal title to the property in question, and did so hold it at the commencement of this suit, it is

manifest that the relief for which plaintiff asks could only be given in the event the United States was before the court as a party and subject to the court's ruling. No argument is needed under the foregoing authorities or as a mere matter of logic to make this proposition clear.

It will be observed from the prayer of plaintiff's initial pleading that no claim is made or insisted upon that in the event specific performance could not be decreed then a judgment for damages should be awarded plaintiff against the defendant. Plaintiff's brief here makes no such claim as we read it. However, plaintiff's petition does have, as we have seen, a general prayer for relief aside from that for specific performance. It may be that he desired that damages should be awarded him against the defendant but this point, as already stated, is not urged. Nevertheless, in that connection it should be noted that 49 Am. Jur. 197, § 173, says that: "A court of equity will not ordinarily decree compensation in damages to a party who, when he files his bill for specific performance, knows that the contract cannot be specifically enforced, but will in such case leave him to his action at law for breach of the contract."

To the same effect is Pomeroy's Specific. Performance of Contracts, Third Ed. 957, § 475, where the rule is stated:

"If, through defect in his title, or any other cause, the defendant was never able to complete by a conveyance, or if the defendant has, subsequently to his agreement, disabled himself from completion by conveying the subject-matter to a *bona fide* grantee for value, and the vendee being aware of the real condition of affairs, brings his suit for a specific performance, knowing that such remedy cannot be granted, then as a general rule the court of equity will not retain the action for the purpose of awarding damages to the plaintiff in place

of his specific relief, but will dismiss the suit and leave the plaintiff to pursue his remedy in the form of a legal action. * * * The knowledge required on the plaintiff's part is not necessarily an absolute certainty, an affirmative intellectual conviction. If at the time of bringing his suit the plaintiff is informed of the real facts—of the defect in the defendant's title, or of the defendant's subsequent conveyance, and there are no other circumstances which could alter the presumption—then he is presumed to know the legal consequences of those facts; the law infers his knowledge that a specific enforcement cannot be decreed. The reason given for this rule, is the want of any jurisdiction in a court of equity to entertain a suit for a specific performance under the circumstances."

It would seem that this rule has been quoted with tacit approval in the late case of Crouser vs. Boice, 51 Cal. App. 2nd 198, 124 Pac. 2nd 358, 362.

58 C. J. 1252, § 604, announces the rule in this form:

"While in some of the cases the rule recognizing the authority of the court to retain the case for damages has been laid down without any express limitation in respect of plaintiff's knowledge of the impossibility of specific relief, in the absence of modification of the rule by statute, it has been held or recognized that where specific performance was impossible at the time of the commencement of the suit, and plaintiff knew or was informed at that time of the impossibility, the court, on denying the equitable relief, will not retain the case for the purpose of awarding damages, but will leave plaintiff to his legal remedy, even though the inability was caused by the act of the defendant."

It has also been ruled in appellate courts of high authority that when a case for specific performance fails whether it shall be retained for the assessment of damages rests "in the sound discretion of the trial judge". See Florimond Realty Co., vs. Waye, 268 Mass. 475, 167 N. E. 635. See also 58 C. J. 1249, § 602. We think it is apparent from the pleadings of the parties that plaintiff, at the time he brought this suit, knew or should

have known, that specific performance of the lease option could not be decreed against the defendant alone. We, therefore, in view of what has been said in the foregoing opinion, reach the conclusion that the judgment of the district court of Carbon County should be affirmed but without prejudice to any action for damages on the part of the plaintiff should he be so advised.

Affirmed.

BLUME, C. J., and KIMBALL, J., concur.