## PARISH *v.* HEDGES. (2)

---

ATTORNEY AND CLIENT; NOTICE; EXECUTORS AND ADMINISTRATORS; APPEALS.

1. Notice to an attorney is notice to his client only when the notice is a part of the particular case in which the relation exists.

2. Notice by a creditor of a decedent's estate of the existence of his claim, given to an attorney who represents the executrix of the estate in a suit by her to establish a claim of the estate against the government, is not notice to the executrix, where other counsel represents her in the administration proceedings, and where the attorney so notified informs the creditor, in response to the notice, that he has made no investigation of the affairs of the estate beyond what he has found to be necessary in the preparation of the particular case placed in his hands.

3. Notice by letter by one claiming to be a creditor of a decedent's estate to the executrix that he and another person have claims against

PARISH *v.* HEDGES.

the estate for considerable sums of money advanced to the decedent to enable him to prosecute a claim against the government does not constitute notice of a claim thereafter asserted by such other person, based upon a contract between him and the decedent, under the terms of which the decedent was to pay him a stated sum for services and advances in the prosecution of the claim; especially in view of sec. 350, D. C. Code [31 Stat. at L. 1246, chap. 854], providing that knowledge or notice of a claim to an executor must be "by an exhibition of the claim, legally authenticated."

4. This court has jurisdiction to entertain an appeal, specially allowed by it under the act of Congress of February 9, 1893 (27 Stat. at L. 434, chap. 74), authorizing it to allow an appeal from any interlocutory order or decree whenever it is made to appear that it will be in the interest of justice to allow such appeal,—from a probate order of the lower court, vacating a previous order of that court approving and passing the account of an executrix, and requiring her to give an additional bond, which order so appealed from was made upon the petition of a creditor of the estate, filed after final distribution had been made, and of whose claim the executrix had no statutory notice before making such distribution.

No. 2050.    Submitted October 19, 1909.    Decided November 2, 1909.

HEARING on an appeal (specially allowed) from an order of the Supreme Court of the District of Columbia sitting as a probate court vacating a previous order of the court approving the final account of an executrix, and requiring her to give an additional bond.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District, holding probate court, setting aside and vacating a prior order of that court approving the final account of the appellant, Emily E. Parish, as executrix of the will of Joseph W. Parish, deceased, and ordering said executrix to give an additional bond in the sum of $15,000.

The death of said Joseph W. Parish occurred in this District on the 26th of December, 1904.    Thereafter, on January 27th, 1905, the appellant, daughter of said Parish, filed a petition for

the probate of the will of decedent. In her petition she stated, *inter alia,* that the testator died possessed of no real estate, and of personal property consisting of wearing apparel of the value of about $25, and a claim against the United States for services rendered and merchandise and goods furnished the United States during the Civil War, which claim the testator, at the time of his death, was engaged in prosecuting, and which the petitioner averred she desired to continue to prosecute.

On April 3d, 1905, said will was admitted to probate and letters testamentary were issued to appellant, she having filed the required bond for the faithful discharge of her duties. Immediately thereafter notice by publication, as required by law, was given to creditors. On June 15th, 1905, the appellant, as said executrix, filed an account in said probate proceeding, in which she again stated that the only personal property left by decedent consisted of his personal effects and wearing apparel at the estimated value of $25. She further stated that the principal asset of the estate consisted of a claim against the United States for services rendered and goods furnished by the decedent, which claim the testatrix further stated it was her intention to endeavor to adjust, and that, in the event she succeeded in her endeavor, she would file an additional account.

Thereafter, on the 13th of March, 1907, the executrix again stated, under oath, that the estimated value of the personal estate was $25, and again stated that the only other asset of the estate consisted of a claim against the United States.

Subsequently, on the 24th of April, 1908, the register of wills having notified testatrix that she had not complied with the request of his office to file an account within the time limited by the Code of law of the District of Columbia, the testatrix filed a further statement in said proceeding as follows: "The only property left by the decedent consists of some personal property of the value of about $25, and the balance consisted of a claim against the United States government. This claim has been passed upon by the supreme court of the District of Columbia, the court of appeals of the District of Columbia, and is now awaiting trial in the Supreme Court of the United

States. When a decision is had in that court, a final account will be rendered, but until that time no account can be rendered nor anything further done in the estate."

On May 7th, 1909, a decision was rendered in the United States Supreme Court adjudging that said executrix was entitled to the sum of $181,358.95, on account of said claim against the United States, and thereafter, on June 7th, 1909, said claim was paid by the United States Treasury. On the same day the executrix, having arranged the compromise or settlement of all known claims against the estate, and having paid in full the legatees under the will, submitted her final account to the justice holding the probate court, who, upon consideration thereof, passed the following order. "On this 7th day of June, A. D. 1909, the foregoing account, being now presented for approval, the same is, after examination by the court, approved and passed."

On June 21, 1909, the appellee, Henry C. Hedges, by Charles Hedges, filed in said probate proceeding a petition in which he averred that the decedent, on October 21st, 1899, entered into the following contract with the petitioner:

This agreement, between Henry C. Hedges, of Mansfield, Ohio, of the first part, and Joseph W. Parish, of Washington, District of Columbia, of the second part:

Witnesseth: That the party of the first part agrees to take the charge and control of a certain claim as associated with Jonas H. McGowan, which the party of the second part holds against the government of the United States for ice furnished the United States during 1863, amounting to $128,171.69, more or less, and to prosecute the same before any of the courts of the United States, and upon appeal to the Supreme Court of the United States, or before any of the departments of the government, or before the Congress of the United States, and before any officer or commission or convention specially authorized to take cognizance of said claim, or through any diplomatic negotiations, as may be deemed by him best for the interests of the party of the second part.

And in consideration therefor, the party of the second part agrees to pay the party of the first part $8,000, for services and advances, the payment of which is hereby made a lien upon said claim and upon any draft, money, or evidence of indebtedness which may be paid or issued thereon.

This agreement not to be affected by any service performed by the claimant, or by any other agents or attorneys employed by him. All expenses of printing, costs of court, and commissioner's fee for taking testimony, are to be charged to the party of the second part; and the party of the second part agrees to execute, from time to time, to the party of the first part, such powers of attorney as may be convenient or necessary for the successful prosecution and collection of the said claim.

No revocation of any authority conferred on the party of the first part by this agreement, or any power of attorney relating to the business covered by the same, to be valid.

In witness whereof, the party of the second part has hereunto set his hand and seal this 25th day of October, A. D. 1899.

Joseph W. Parish. (Seal)

That the services required of him had been rendered, and that before and after the execution of said contract the petitioner advanced to decedent sums of money aggregating $1,800 to further the prosecution of said claim; that inasmuch as petitioner's claim against decedent was dependent upon the allowance of decedent's claim against the United States, the petitioner had been prevented from presenting it for consideration and approval by the court in the general notice to creditors; that, on the 15th day of March, 1909, Leigh Robinson, Esq., was notified by Charles Hedges, the authorized agent of petitioner, of petitioner's said claim against the estate of said Parish, "under the belief and understanding that the said Robinson was then the attorney of record for the executrix herein;" that said notice was in writing as follows:

"I observe that the case of the estate of Joseph W. Parish v. The Secretary of the Treasury has just been argued before

the Supreme Court, and I understand you are now the attorney of record for the executrix.

"I write, therefore, to inquire, in view of a possible favorable decision, whether you have been advised or given any instructions by the heirs of Col. Parish, regarding the existence of the claims of my uncle, Henry C. Hedges, of Mansfield, Ohio, and myself for considerable sums of money advanced to Mr. Parish to enable him to prosecute his case.

"We hold a contract with Mr. Parish which is in full force, also his promissory notes and other evidences of indebtedness and many letters.

"Please inform me at this juncture whether our proven claims against the estate are to be recognized without litigation; if so, I will request my attorney to call upon you."

That "said Robinson turned said letter over to Holmes Conrad, Esq., counsel of record for said executrix in certain proceedings instituted by her to compel the payment of said sum found to be due said estate on said claim;" that said Conrad responded to said letter as follows: "Mr. Leigh Robinson, who is associated with me in the case of Parish v. United States, argued and submitted last week in the Supreme Court, has handed to me your letter to him, of date of the 15th inst., and requested that I would acknowledge and reply to it. Should the decision of the Supreme Court be favorable to us, there will doubtless be ample assets in the hands of the personal representatives of Jos. W. Parish, dec'd, to satisfy all the claims that may be established against the estate; but the result is so uncertain, although we are confident in the legal strength of the case as presented, that we have given no thought to the consequences that may ensue should the writ of mandamus prayed for be granted, and have made no investigation of the affairs of the estate, beyond what we have found to be necessary in the preparation of the particular case placed in our hands. Mr. Grant Parish, 1429 New York Avenue, Washington, District of Columbia, is the son of Jos. W. Parish, and may be able to answer your inquiries." That, "notwithstanding said notice to counsel for the executrix herein of petitioner's said claim," said executrix filed her "first and

final account" for approval of the court without advising the court of the existence of said claim of the petitioner. The petition prayed for a rule to show cause and an order setting aside and vacating said order approving said final account of the executrix. Rule to show cause was issued and answers were filed both by the executrix and certain of the legatees. The court, after a hearing, granted the petition, as above stated, and required executrix to give an additional bond in the sum of $15,000. Thereupon the executrix asked for a special appeal to this court, which was allowed.

During the time of the pendency of said probate proceeding, said claim against the United States was being prosecuted in the courts of the District, and also in the Supreme Court of the United States, by Holmes Conrad, Esq., and Leigh Robinson, Esq. In her answer to appellee's petition, appellant stated under oath: "That said counsel had not been employed in respect to any matter pending in the probate court, and had no knowledge of such." Prior to June 21st, 1909, appellee filed no claim against said estate, and before the filing of said petition nothing further was done by him by way of asserting said claim than the sending of said letter by said Charles Hedges to Mr. Robinson. Appellee maintains that the sending of this letter constituted notice to the executrix of his claim.

*Mr. Holmes Conrad* and *Mr. Leigh Robinson* for the appellant.

*Mr. Henry E. Davis* and *Mr. John E. Laskey* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

Section 350 of the Code provides that "no executor or administrator who shall, after the lapse of one year after the date of his letters, have paid away assets to the discharge of just claims, shall be answerable for any claim of which he had no knowledge or notice *by an exhibition of the claim, legally*

*authenticated*" [31 Stat. at L. 1246, chap. 854], provided
that, before distribution, he shall have given legal notice to
claimants.   Inasmuch as such notice was given in this case, the
important question arises whether said letter to Mr. Robinson
constituted constructive notice to the executrix, within the
meaning of said sec. 350.

It may be stated as a general proposition that, where the
relation of attorney and client exists, the law of principal and
agent generally applies, and that the client is bound by the acts
of the attorney within the scope of his authority.   But it by
no means follows that, because the attorney is engaged in a
particular suit, that notice to him in reference to a cause or
proceeding with which he has nothing to do, and over which
he has no authority or control, constitutes notice to his client.
On the contrary, notice to the attorney is notice to the client
only when the notice is a part of the particular case in which
the relation exists.   *Pacific Mfg. Co.* v. *Brown,* 8 Wash. 352,
36 Pac. 273; *Atchison, T. & S. F. R. Co.* v. *Benton,* 42 Kan.
698, 22 Pac. 698; *Stewart* v. *Sprague,* 71 Mich. 60, 38 N. W.
673.   Tested by the rule announced, it is apparent that the
letter to counsel engaged in the prosecution of said claim did
not constitute notice to their client in reference to a matter
pending in the probate court, and not concerning in any way
the subject-matter of their employment.   In Mr. Conrad's
letter it is distinctly stated that counsel "have made no investi-
gation of the affairs of the estate, beyond what we have found
to be necessary in the preparation of the *particular case placed
in our hands.*"   If this means anything, it means that their
authority ended with the prosecution of the particular case
intrusted to them.   The record in the probate proceeding shows
that Mr. Potbury was counsel for the executrix in that pro-
ceeding, and there is nothing in this record to justify the
assumption of Hedges, that Messrs. Conrad and Robinson, at
that time, were authorized to represent the executrix before the
probate court.

Thus far we have assumed that, had said letter of Charles
Hedges been addressed to counsel authorized to represent exe-

cutrix in the probate proceeding, it would have constituted notice to the executrix within the meaning of said sec. 350 of the Code. An analysis of said letter in connection with the provisions of said section, we think, leads to a different result. The claim as finally set forth in appellee's petition is based upon an alleged contract between the decedent, Parish, and appellee, under the terms of which appellee was to receive a stated sum for services and advances in connection with the prosecution of the claim of said Parish against the government. In the letter to Mr. Robinson, Charles Hedges refers to "the claims of my uncle, Henry C. Hedges of Mansfield, Ohio, and myself for considerable sums of money advanced to Mr. Parish to enable him to prosecute his case." The writer further states that *"we* hold a contract with Mr. Parish," etc., and asks to be informed "whether *our* proven claims against the estate are to be recognized without litigation; if so, I will request my attorney to call upon you." It is, we think, clear that said letter referred to claims for money advanced by Henry C. and Charles Hedges to the decedent, Parish, and to a contract with said Parish to secure said indebtedness. Such a letter can hardly be held to constitute notice of a claim by Henry Hedges of a different character. Especially is this true in view of the language of the statute requiring that knowledge or notice of a claim to an executor must be "by an exhibition of the claim, legally authenticated." These words would seem to require a claimant, if he would stay proceedings, to present a legally authenticated claim to the executor. This letter falls far short of a compliance with the statute.

Various other questions have been raised by appellant, but, in view of the conclusion that the executrix had no notice of the existence of appellee's claim when she settled the estate, it is not necessary to notice them.

The point is made in the brief of appellee that this court is without authority to entertain this appeal and to reverse the action of the court below in vacating its order approving the account of the executrix, for the reason that the action of the

justice holding probate court, in vacating such an order, is so within his discretion as to preclude the right of appeal.

Under the law of its creation (act of Feb. 9, 1893, 27 Stat. at L. 434, chap. 74), this court is authorized to allow an appeal from *any* interlocutory order of the supreme court of the District, or of any justice thereof, whenever it is made to appear to this court, upon petition, that it will be in the interest of justice to allow such an appeal.

In the present case more than four years intervened between the issuance of letters testamentary and the settlement of the estate. There was compliance with the provisions of the statute. All known claims against the estate were adjusted and the remaining assets distributed. When appellee filed his petition, the order which he sought to nullify had gone into effect,—the distribution had been made. In such a situation the law says the executor shall not be answerable for any new claim unless he had notice of such claim before the settlement of the estate. We have found a lack of such notice in this case; hence, the order setting aside the order of settlement, and requiring appellant to give an additional bond in the sum of $15,000, is sure to work hardship and injustice to her.

Because of his laches, appellee had no legal status before the court, and the order appealed from imposed upon appellant burdens from which the statute exempts her. In allowing an appeal from this order, this court exercised the discretion intrusted to it by statute, and that discretion cannot be questioned here.

In *Connor* v. *Peugh,* 18 How. 394, 15 L. ed. 432, cited by appellee, the plaintiff in error, Mrs. Connor, was not a party to the original suit, which was an action of ejectment to recover possession of a lot, Mrs. Connor being the tenant in possession. Judgment by default was entered against the casual ejector and the tenant in possession, and a writ of habere facias possessionem was sued out. On the return day of the writ, counsel for Mrs. Connor moved to set aside the judgment and to quash said writ upon the ground of lack of notice to her. The motion was overruled and her petition dismissed. The court

ruled that since no one not a party to the suit can bring a writ of error, and Mrs. Connor having neglected to have herself made such, she could not have a writ of error to the judgment against the casual ejector. The court then said: "The motion afterwards made to have the judgment set aside, and for leave to intervene, was an application to the sound discretion of the court. To the action of the court on such a motion no appeal lies, nor is it the subject of a bill of exceptions or writ of error." The difference between that case and this is apparent. There the plaintiff in error sought to set aside a judgment in a suit in which she was not a party. Failing in that, she moved to have the judgment set aside, and for leave to intervene. There is nothing to indicate that, had the motion been granted, the parties would not have been put *in statu quo*. It was a case where, upon proper showing, the trial court would have been justified in granting the motion. In other words, it was a case for the exercise of discretion by the trial court. In the present case, it appeared from the petition filed by appellee that he had no right to the order prayed for. The court, therefore, had no discretion in the premises.

The order appealed from must be reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                     *Reversed.*