# NEW YORK CONTINENTAL JEWELL FILTRA-TION COMPANY *v.* DISTRICT OF COLUMBIA.

## ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 145.    Argued December 22, 1911.—Decided February 19, 1912.

The Union Station Act of February 28, 1903, 32 Stat. 909, c. 856, im-posed larger liabilities on the railroad company for necessary changes than did the earlier act of February 22, 1901, 31 Stat. 767, c. 353, and provided for the payment of a sum of money to the railroad com-pany. The work contemplated by the later act included material changes whether within or outside of the right of way.

Under the contract made by the plaintiff in this case with the District of Columbia for the latter to make the necessary changes, the Dis-trict is entitled to be paid for all the work outside of, as well as within, the railroad's right of way.

Independently of the statute, and on the evidence as to the intention of the parties, the contract is properly construed as including work outside of as well as within the right of way.

33 App. D. C. 377, affirmed.

THE facts, which involve the construction of certain acts of Congress for the erection of the Union Station and the elimination of grade-crossings in the District of Colum-bia, are stated in the opinion.

*Mr. James H. Hayden* for plaintiff in error.

*Mr. Edward H. Thomas* for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action of assumpsit by plaintiff in error in the Supreme

Court of the District of Columbia to recover the sum of $7,172.97 claimed by it as the amount of unexpended balances of three deposits made by it with the District to cover the cost of certain work undertaken by the District for it.

The case was tried to a jury which, under the instructions of the court, returned a verdict for the plaintiff in the sum of $1,089.79, with interest, upon which judgment was duly entered. The judgment was affirmed by the Court of Appeals. We shall refer to plaintiff in error as plaintiff and to the defendant in error as the District.

The controversy grows out of work required to be done by certain acts of Congress for the elimination of grade crossings on the line of the Baltimore & Ohio Railroad Company in the city of Washington, and requiring the railroad company to depress and elevate its tracks, and to enable it to relocate parts of its railroad therein, and for other purposes. Act of February 12, 1901, 31 Stat. 767, c. 353. The scheme of improvement was quite extensive and the act described in detail the changes to be made in the grades of streets in connection with the change of the location of the railroad company's tracks and station.

Section 9 of the act is the one with which we have most concern. It provides as follows, omitting parts not essential to be quoted:

"SEC. 9. That the entire cost and expenses of the revision, changes, relocations, and improvements of and in said railroad, as authorized and required by the preceding sections of this Act, and of all structures connected therewith or incidental thereto, shall be borne, paid, and defrayed in manner following, to wit: The said Baltimore and Potomac Railroad Company shall bear, pay, and defray all cost and expenses of relocation, elevation, and depression of its tracks within the limits of its right of way as are authorized and required by this Act.  . . . All other costs, expenses and damages resulting from, in-

cidental to, or connected with the revisions, changes, and improvements in alignment and grades of said railroad, or the relocations thereof by this Act required and authorized and from changes in the grades of the streets or the railroad . . . shall be borne, paid, and defrayed in manner following, to wit: Fifty per centum thereof by the United States and the remaining fifty per centum thereof by the District of Columbia. . . . All work within the limits of said railroad company's right of way . . . shall be done by said railroad company to the satisfaction and approval of the Commissioners of the District of Columbia, who are authorized to exercise such supervision over the same as may be necessary to secure the proper construction and maintenance of the said work. And all work which is without the limits of the right of way . . . shall be done by the District of Columbia."

There were quite radical modifications of the plan for the railroad terminal made by an act passed in 1903. February 28, 1903, 32 Stat. 909, c. 856. Among other things, it provided for the construction of tunnels. It is, however, contended by plaintiff that the distribution of the cost of the work, as provided in § 9 of the prior act, was not changed. The District contends that the deposits made by plaintiff were for work to be done by the latter, and that the work which was done by it, the District, was upon construction neither contemplated nor authorized by the act of 1901, but was embraced in the new location directed by the act of 1903, and was imposed by the latter act upon the railroad company, and was done by the plaintiff as agent of the railroad company.

In pursuance of the acts of Congress the railroad company prepared a plat of its proposed line, extending from Second Street and Virginia Avenue southwest to First Street and Massachusetts Avenue northeast. This embraced the change necessary to connect its tracks with the

new Union Station. The plat shows the course of the tunnels in question. The railroad company engaged plaintiff to construct the tunnels, and plaintiff proposed to the District that the District perform that portion of the work involved in changing and relocating the sewers and water mains.

The following letter was written by the Engineer Commissioner of the District to plaintiff:

"WASHINGTON, *July* 22, 1903.
"The New York Continental Jewell Filtration Company,
    New York, N. Y.:

"GENTLEMEN: Referring to our oral conversation of July 16, in which you requested that the sewer and water changes necessary on account of the construction of the tunnel of the Pennsylvania R. R. Company, this city, be made by this office, and the plat which you left with me, I would state that the estimated cost of making the changes in the sewers is $7,693.00, and of changes in water mains is $488. Deposit slips for these amounts are herewith, and the deposits should be made separately, and upon receipt of the deposits the work will be done by this office. The Water Department made some modifications of the plan suggested by you in the drawing which you left, with the object of obtaining better circulation, and the sewer division increases the size and slope of the proposed new portion of sewer. I return your suggested plan.
        "Very respectfully,          JOHN BIDDLE,
            "*Major, Corps of Engineers, U. S. A.,*
                "*Engineer Commissioner, D. C.*"

Subsequently letters were addressed to plaintiff containing estimates of necessary changes in the water mains and sewers caused by the construction of the tunnel, respectively, $488 and $7,693, and stating that if plaintiff wished the District to do the work it should deposit those amounts with the Collector of Taxes of the District. The

letters were dated, respectively, the twentieth and twenty-first of July, 1903.

The plaintiff accepted the District's offer to make the changes upon making the deposit indicated.

There was another change requested by plaintiff and undertaken by the District, an estimate of which was furnished and a deposit of the amount made by plaintiff.

On May 11, 1904, and after the completion of the work, the plaintiff wrote a letter to the District, in which it stated that it had deposited with the Collector of Taxes of the District certain amounts for sewer changes and water main changes "within the right of way" at certain designated points, and asking for a statement of the work and a return of the unexpended balances. Receiving no reply, plaintiff addressed another letter to the District of the same purport. There was other correspondence, which need not be given, as it is agreed that plaintiff had deposited $7,693 to cover the cost of changes in sewers and the sums of $488 and $600 to cover the cost of changes in water mains, that there was expended on sewers within the right of way the sum of $1,565.41, and on water mains, $42.62, total $1,608.03, which, being deducted from the amount deposited by plaintiff, would leave an unexpended balance of $7,172.97, if plaintiff's contention be correct. If, on the other hand, the contention of the District be correct and plaintiff is chargeable with cost of work done outside of the right of way, there would be a balance returnable of only $1,089.79.

The contention of the plaintiff is, as we have seen, that the railroad company was only required to defray the cost of work within the limits of its right of way and that plaintiff's obligation is not greater, as it only undertook to do the work for the railroad company. In other words, plaintiff contends that the acts of 1901 and 1903 are the test of the rights of the parties. The District contends, on the other hand, that those acts do not control the case.

The case made by the pleadings and the evidence, the
District insists, "is one of simple contract composed of
an offer or request by the plaintiff to the defendant, which
the defendant accepted and performed." It is further
urged by the District that if the acts of 1901 and 1903 can
be regarded as pertinent, all of the parties, the District,
the plaintiff and the railroad, construed them in accord-
ance with the contention of the District. It is urged
further that the act of 1901 contained no reference to
changes in water mains and tunnels, and that the act of
1903 "imposed upon the railroad the obligation to do
the entire work, thus modifying the former act, and, in
return, provided for the payment of a large sum of money
to the railroad."

It is very certain that the act of 1903 introduced new
features into the scheme provided for by the act of 1901
and gives support to the contention of the District. It
was testified by the Assistant Engineer of the District
as follows: "The tunnel was not contemplated in the act
of 1901. It was built pursuant to the act of 1903, and
takes the place of the connection that would have been
made to the Sixth Street station, had that station re-
mained, as contemplated by the act of 1901. There was
no tunnel at this point contemplated by the act of 1901."

But without dwelling further upon this contention, we
shall pass to the other contention of the District. The
declaration in the case alleges that plaintiff, "acting in
that behalf as the agent of the Philadelphia, Baltimore &
Washington Railroad Company, was engaged in con-
structing for said company certain tunnels at and about
the intersection of New Jersey Avenue and D Street,"
which the railroad company was required to construct
under the acts of Congress of 1901 and 1903.

It is alleged that the construction of the tunnels made
necessary the change in the location of certain sewers
and water mains. That estimates were made by the Dis-

trict and notice given thereof to plaintiff conveying an offer by it to make the changes, provided plaintiff would deposit the cost thereof with the District. That the plaintiff did so upon the condition that the District would use so much of the deposit as would be necessary to make the changes "which the railroad company was required to perform or pay for" and return whatever balances there might be to plaintiff. The balances due are stated.

Issue was joined on the declaration by the District and it set up besides affirmative matter of defense.

It will be observed that a contract between the plaintiff and the District is alleged, and we are to inquire whether it was established or whether some other contract was established. The facts show that the company approached the commissioners for the purpose of having the District undertake the work, as will be seen by the letter of July 22, 1903, which we have quoted above, submitting a plan of the work, which was changed somewhat by the Commissioners. The letter was addressed to plaintiff and contained these significant words: "The estimated cost to you for making the necessary changes in sewers caused by the construction of tunnel N. J. Ave. and D Street, S. E., is $7,693.00." In the other letters the same words are used, as to water mains, the expense being stated at $488 and $600.

Plaintiff contends that under the circumstances those words were sufficient to cause it "to believe that the District understood that the 'necessary changes' would involve costs to be defrayed by the Government, or at any rate some party other than the company." But this could only be on the supposition that the act of 1901 controlled and was thought by the District to control. The District thought otherwise—thought the act of 1903 controlled and required the work to be done at the expense of the railroad company and therefore by its agent, the plaintiff, and, granting this position could be disputed,

it nevertheless gives meaning to the language it used when addressing plaintiff as undertaking the work and all of the work, that outside and that within, of the railroad's right of way. And we do not see how plaintiff could have understood otherwise. If the words did not necessarily of themselves point to plaintiff as the party to defray the expense, the amount of the deposit required indicated that it was to cover the work outside of the right of way. The estimate of costs and deposits required amounted to $8,781.00, and yet it is admitted that the cost of the work within the right of way or space covered by the tunnels was only $1,608.03. The difference is too great to have been overlooked or its importance and meaning misunderstood. It is attempted to be explained, but inadequately. The necessity of the work was seen by plaintiff's engineer in charge, and he also saw the work going on daily outside of the right of way. He explained as follows: "We knew that the estimated amount was excessive for that which was solely within the right of way, but we considered that we were protected in the matter by the law. I did not know the cost of taking out 64 feet of sewer and putting it back. I had no estimate on it. I consider $7,693 for taking out 64 feet of sewer an excessive amount. I did not know that it could be done within $1,600. I made no estimate at all. I know that the total estimate submitted was largely in excess of the cost of work required within the right of way. . . . It was largely in excess, 50 per cent or more, but I only looked at it in a general way. I did not know it was 80 per cent more, and did not figure out the actual or approximate cost."

We repeat the explanation is inadequate. An excess of more than fifty per cent in an estimate of the work within the right of way necessarily pointed to some other work and plaintiff was called upon then to make objection if it had any. If it had objected the District might have

refused to deal with it and insisted upon the responsibility of the railroad company. It is now in a different situation. This record does not show that the railroad company ever disputed its responsibility. Indeed there is evidence which makes the other way.

*Judgment affirmed.*