**BUSSIUS v. BUSSIUS.**

No. 10348.

District Court of the United States for the District of Columbia.

May 16, 1941.

Jean M. Boardman, of Washington, D. C., for plaintiff.

Raymond Neudecker, of Washington, D. C., for defendant.

MORRIS, Associate Justice.

This is a suit in which the plaintiff seeks a limited divorce, temporary and permanent custody of the minor daughter of the parties, temporary and permanent alimony, counsel's fees and costs. Shortly after a motion for temporary alimony and custody of the minor daughter was filed, the plaintiff, accompanied by her counsel, appeared at the office of the Domestic Relations Commissioner of this Court and made a statement, setting forth her financial condition, specifying her current expenses, debts and property owned by her. She also made a statement of the acts of her husband complained of with somewhat more particularity than set forth in the complaint. The defendant thereafter appeared at the office of the Domestic Relations Commissioner and made a statement, setting forth his financial condition, specifying his current income and expenses, his debts, and the property owned by him. He also made a statement as to acts of the plaintiff, which were with less particularity set forth in an answer filed by him two days later. Prior to the filing of the report of the Domestic Relations Commissioner, the plaintiff, by her counsel, requested that his report omit any statements made by the plaintiff concerning the merits of her action. This request was on the ground that, although the statements made were entire-

ly consistent with the allegations of her complaint, it was considered that the Court's information as to the plaintiff's cause of action should come from the complaint itself, and not from the Domestic Relations Commissioner's report. Objection was also made to the inclusion in said report of any similar statements which the defendant should make in the Commissioner's office. It was pointed out that, under the Rules of Civil Procedure, 28 U.S. C.A. following section 723c, the judgment of the Court must be based entirely upon the pleadings and facts established by sworn testimony or affidavits, and it was insisted that reports of unsworn ex parte statements made by the parties or others to the Commissioner or his assistants have no place in the record.

After the filing of the report of the Domestic Relations Commissioner, containing the matters objected to, a motion to strike said report was filed by the plaintiff. The grounds of the motion are in substance those stated in the objections above mentioned, and in addition that the Domestic Relations Commissioner had no legal authority to make or file such a report; that the information contained in the report, or a portion thereof, was from statements made by the parties to a deputy clerk assigned as assistant to the Domestic Relations Commissioner; and that the report contained certain statements made by the defendant concerning the plaintiff and another person which are impertinent, scandalous and indecent.

The defendant opposed the motion to strike the report on the ground that the Domestic Relations Commissioner was authorized to receive the statements of the parties and make report to the Court thereon, and in argument insisted that the matters objected to as impertinent, scandalous and indecent were no more so than the matters set forth and contained in the complaint and answer of the parties.

The question presented has two aspects: First, that this Court is without power to create the office of Domestic Relations Commissioner and to consider reports made by him; and second, that the report here under consideration should not, in view of objection to certain parts thereof, be considered by the Court in making a determination of the amount of temporary alimony to be awarded to the plaintiff. (The plaintiff insists that the award of the custody of the minor daughter is not a controversial question between the parties.)

■ I cannot agree with plaintiff's contention that this Court does not have such power, or that it should not use that power in the discharge of its duties in the vital field of domestic relations litigation. This Court, in General Term, is empowered by the Congress "to establish written rules regulating pleading, practice and procedure, and by said rules make such modifications in the forms of pleading and methods of practice and procedure prescribed by existing law as may be deemed necessary or desirable to render more simple, effective, inexpensive and expeditious the remedies in all suits, actions and proceedings," with the proviso that such rules be not inconsistent with rules adopted by the Supreme Court of the United States. On October 8, 1940, this Court, in General Term, adopted the following rule:

"Rule 15(9). An assistant clerk of court, to be known as Domestic Relations Commissioner, shall be designated to assist the Court in domestic relations cases. All cases involving determination of the question of temporary custody of a child, or of the question of the amount of temporary maintenance for a wife, or child, shall be investigated by the Domestic Relations Commissioner, who shall make written report of his investigation, with recommendations based thereon, at least five days before a hearing in Court, and shall furnish a copy of his report to each party. Where a report is filed and no objections are filed to it within two days after a party has been given a copy of the report, the Court shall have authority to act on the report without hearing. If the report of the Domestic Relations Commissioner is not filed within ten days after a case has been brought to his attention, and prompt action is deemed necessary by the Court, a hearing may be held without the report."

On October 10, 1940, the Court, in General Term, appointed the present incumbent, being an assistant clerk of court, as Domestic Relations Commissioner.

It is urged that the new Rules of Civil Procedure control and place limitations upon the appointment of masters, referees and examiners, and that, because the Domestic Relations Commissioner does not meet the requirements of these rules with respect to duties or personnel, the action of this Court in creating such office and making such appointment is fatally defective. When causes are referred to masters, referees or examiners, the evidence in the cause is taken by those officers, and the

cause is decided upon the evidence so taken and upon no other. There the parties are not told that they may appear before such officer, furnish him with such information as they can to the end that it may be ascertained what facts critical to the issue may be agreed upon, what facts are in dispute, and which of the latter, if any, the parties wish to be determined by the Court upon evidence submitted by them. That, in effect, is what is sought to be accomplished by the use of the Domestic Relations Commissioner. His action in the case is in the nature of a pretrial effort to eliminate questions on which there is no necessity of taking evidence, without in any way precluding any party from having a question determined by the Court upon sworn evidence when such party wishes to offer such proof, or to cross-examine witnesses offered by the adverse party. The short experience since the appointment of the Domestic Relations Commissioner amply demonstrates the usefulness of that procedure. Of the 339 cases in which investigation and recommendation have been made, the parties consented to such recommendations in all but fifty-six cases, in which determinations were asked by the Court on objections filed to the reports.[1]

It is thus apparent that this procedure in domestic relations cases has not only proved of great aid to the Court and expedited the disposition of such cases, but it has offered a method by which the parties can conveniently dispose of preliminary matters.

 Such value as has been alluded to is not, however, the only consideration which justifies the use of the procedure in question. It is well recognized that the Federal Government in this jurisdiction, and the State Government elsewhere, is an interested party in any action wherein the dissolution of the marital relation is involved. Indeed, it has been said by the courts and eminent writers on the subject that such an action is really a triangular proceeding, to which the husband and the wife and the State are parties, and in all such cases the Court represents the State. Hence, the courts are bound to protect the public interest as well as the rights of the parties themselves. Furthermore, in such cases, where the award of the custody of a child is involved, it is the peculiar responsibility of the Court to act in the best interest of such child, even where the contentions of the parties might be adverse to that interest. It can hardly be questioned that a court should exercise its full powers in the discharge of this public duty. If, by the procedure here in question, the Court can be advised of witnesses, whose testimony is critical to these questions of public interest, and who otherwise would not be brought to the Court's attention, further justification for the procedure is not needed. Providing, as the procedure does, that the parties at interest may, by objecting to the Commissioner's report, have such of the questions as they wish determined by the Court in the conventional method upon legally admissible evidence, I cannot conclude that there is either a lack of power in the Court to prescribe such procedure, or that such procedure is in derogation of the rights of parties litigant. I do not consider the rule here in question to be inconsistent with the rules adopted

---

[1] Disposition of Cases Referred to the Domestic Relations Commissioner
November 1, 1940 to May 15, 1941
423 Cases have been received.
- 70 cases now pending in the office for the following reasons:
 2 cases—Motion to dismiss
 15 cases—Settlements being negotiated
 7 cases—Reports being written
 21 cases—Pending interviews with parties
 23 cases—Held at request of counsel for moving party
 2 cases—Held pending service
 14 cases—Reports on file and awaiting next hearing day.
339 cases have been closed in the following manner:
 15 cases—Reconciliations
 5 cases—Lump sum settlements
 116 cases—Agreements worked out in this office
 25 cases—Agreements worked out by attorneys outside of office
 25 cases—Motions withdrawn
 93 cases—No objections to report filed
 56 cases—Objections to report filed
 4 cases—Referred only to determine defendant's income
Out of 339 cases closed, only 149 cases went into Court for determination by the Court. Of these, the parties consented to the recommendation in 93 cases, leaving 56 cases to be determined by the Court on the objections filed therein.

by the Supreme Court of the United States, nor do I believe the assignment of additional personnel to assist the Domestic Relations Commissioner vitiates his right to act.

The next query is whether or not the report here under consideration should be considered by the Court in making a determination of the amount of temporary alimony to be awarded to the plaintiff in view of the objections which have been made to certain parts of the report. As stated above, the procedure in question is not intended to preclude any party who so desires from having a controverted fact determined by the Court upon evidence of sworn witnesses who are subject to cross-examination; and, as the objections made by the plaintiff to certain parts of the report clearly show the desire of such party to have the matters objected to so determined, the motion to strike will be granted in so far as it relates to the acts of the parties as stated by them to the Commissioner.

