## BROWN v. BROWN.

### No. 8006.

United States Court of Appeals for the District of Columbia.

Decided Dec. 21, 1942.

Mr. Ward B. McCarthy, of Washington, D. C., for appellant.

Mr. Burton A. McGann, of Washington, D. C., for appellee.

Before STEPHENS, VINSON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The special appeal is from an order of the District Court denying appellant's motion that certain matters be not referred to the Domestic Relations Commissioner for investigation and report.

Appellant and appellee are husband and wife, who have been living apart since before this suit was begun. In July, 1940, he instituted it, seeking only the custody of their six-year-old child. The wife answered, praying custody. On August 16, 1940, the court awarded custody to her pendente lite, with provision for the father to see the child at suitable times and that neither party should remove the child "from its present home except as provided herein without the approval of both parties." The child was then living with the maternal grandparents near Frederick, Maryland. On July 25, 1941, appellant filed a written motion (1) to amend the order of August 16, 1940, "by more equitably dividing the custody" between the parties or requiring that the child be returned to

the District of Columbia and remain here, and (2) to advance the cause for early hearing on the merits.

Thereafter appellant's attorney moved orally that the written motion of July 25, 1941, be not referred to the Domestic Relations Commissioner for his investigation and report. The oral motion was denied. We allowed a special appeal, to be confined to the single question of the validity of Rule 15 (9), now Rule 9 (h), of the District Court. The rule is as follows:[1]

"An assistant clerk of court, to be known as Domestic Relations Commissioner, shall be designated to assist the Court in domestic relations cases. All cases involving determination of the question of temporary custody of a child, or of the question of the amount of temporary maintenance for a wife, or child, shall be investigated by the Domestic Relations Commissioner, who shall make written report of his investigation, with recommendations based thereon, * * * *and shall furnish a copy of his report to each party. Where a report is filed and no objections are filed to it* within two days after a party has been given a copy of the report, the Court shall have authority to act on the report without hearing. If the report of the Domestic Relations Commissioner is not filed within ten days after a case has been brought to his attention, and prompt action is deemed necessary by the Court, a hearing may be held without the report." (Italics supplied.)

Rule 15 (9) was adopted in general term[2] October 8, 1940, and on October 10 following an order was entered designating Philip M. Hamilton, an assistant clerk of the court, as Domestic Relations Commissioner.

Appellant vigorously attacks the rule as being beyond the court's power to adopt and as violative of due process of law in its procedures and effects. He also challenges the authority of the assistant clerk to act as Domestic Relations Commissioner and of the court to appoint him as such. These questions may be here prematurely. If the rule had been applied to appellant and he had been prejudiced in any respect, he would be in position to complain. But the rule has not been applied to him, nor have his rights been prejudiced by its operation. His motion, now in review, does not relate to such an application. It seeks rather to prevent one, and it does this without showing that it could or would injure him or violate any right.

The rule is applicable only to questions arising pendente lite, specifically the temporary custody of a child and temporary maintenance for a wife or child. The Commissioner is authorized to investigate, report and recommend in such matters. He must furnish a copy of the report to each party. When the report is filed, *if no objections are made,* the court is authorized to act upon it without a hearing.

The practice under the rule and its admitted effect are to give the court and the parties the benefit of the report when neither party objects. If either makes objection, it is not considered. Cf. Bussius v. Bussius, D.C.1941, 38 F.Supp. 871. The entire procedure is a consent procedure. Cf. Mahoney v. Mahoney, Ohio Ct.App.1931, 9 O.L.A. 434, holding that in the absence of objection the court may act upon such a procedure in these matters, though action against objection was held invalid. The purpose of the rule is not to deprive a party of the opportunity to present such evidence as he wishes to offer in the usual manner, and it does not have that effect. The terms of the rule might have been drawn, perhaps, to express this intention more positively. But the construction which the court has placed upon it in practice and in the decision referred to must be taken as expressing its true intent and effect, at any rate until it is applied in some other way. The rule does not make the report evidence or admissible in evidence. It does not purport to keep out evidence. It merely provides a convenient and accurate method, as well as an

---

[1] The language of the present rule, Rule 9(h), is slightly different, but the substance of the two rules is the same.

[2] D.C.Code 1940, § 11—312: "The general term of said court shall be open at all times for the transaction of business; and said court, by orders passed in general term, may regulate the periods of holding the special terms * * * may establish written rules regulating pleading, practice and procedure, and by said rules make such modifications in the forms of pleading and methods of practice and procedure prescribed by existing law as may be deemed necessary or desirable to render more simple, effective, inexpensive, and expeditious the remedy in all suits, actions, and proceedings * * *."

expeditious one, by which facts may be secured and presented for the court's attention in interlocutory matters when both parties consent to its use. As the court stated in the Bussius case, 38 F.Supp. at page 873, it also affords a procedure "in the nature of a pretrial effort to eliminate questions on which there is no necessity of taking evidence, without in any way precluding any party from having a question determined by the Court upon sworn evidence when such party wishes to offer such proof, or to cross-examine witnesses offered by the adverse party." We find no sound basis for regarding a rule which operates in this manner as invalid or beyond the court's power to adopt.

What appellant seeks by this appeal is to have us, in effect, enjoin or prohibit the trial court from making application of a rule to him which he himself can avoid simply by objecting to the use of the report when it is filed. Because it has not been applied to him, is not certain to be applied, and because he has full power to prevent its application and therefore any of the allegedly harmful consequences he seems to fear, he is not entitled to the relief he seeks.

Counsel substantially conceded at the oral argument that appellant has it in his power to prevent any harm anticipated from use of the report by the court in deciding the written motion. In one respect, however, it was urged the rule would operate to appellant's detriment. This was in the mere facts of making the investigation and filing the report. Under the letter of the rule these take place before either party has an opportunity to make objection. In other words, appellant urges it is a violation of the court's authority and his rights for the Commissioner to make his investigation and file his report, regardless of whether it is or may be used against him. The objection is not well taken.

If, as was not asserted, it is founded upon the hypothesis that the court will disregard its own rule and practice, by having recourse privately to the report notwithstanding objection to its use, the objection cannot be tolerated. Should such a case arise, it will be time enough to take action regarding it when it does. If that is not the basis for the contention, we do not see how appellant can be injured through operation of the rule to this extent. The Commissioner's efforts might be wasted, but that would not be a sufficient basis for challenge of the rule by a party who objects to use of the report. Nor does the rule subject him to any form of inquiry or inquisition. No duty is imposed to appear before or respond to questions asked by the Commissioner, furnish him with information, or cooperate in any other respect. The only fear explicitly stated was that the Commissioner might discover some discrediting fact, incorporate it in his report, and thus spread it in the files of the court for public notice. The contingency is possible. But if it were more than that it would hardly be a sufficient ground for the relief appellant now seeks. Something more than the possibility that someone, even an official of the court, may incorporate in the court's files a paper or papers containing matter discreditable to a litigant is required to furnish a basis for relief. Private litigants daily file such matter, yet it is not our function to avoid the rules which permit this, in advance of the fact. Nor, before it occurs, are we justified in assuming the event feared by appellant will take place or do so to his injury. We think therefore appellant has misconceived his rights, because he has anticipated injuries which may never occur and which, in large part if not altogether, the rule itself gives him power to prevent.

We add that appellant seems to regard the proceeding as merely an adversary one between private parties involving private rights. It is more than that. When parents are at odds and their differences include the custody of a minor child or children, the court is an interested party as much as they. The proceeding is in fact tripartite. While all rights of the parents must be observed, the interest and welfare of the child are the primary considerations. Of these the court is guardian, representing the state, in an independent sense, above and beyond the duty to observe the parents' rights. In cases where both parents are disqualified for custody, it cannot leave the matter to be determined solely by their crossing of swords. Nor can it do so in any case when that mode of litigation and decision will not protect the interests of the child as fully as should be done. It was no doubt in recognition of this obligation that Rule 15 (9) was adopted. We note this in order to point out that timely attack, to be successful, must take account of the court's peculiar

position in such matters, and not merely of the adversary rights of the contending parents.

The order is affirmed.

STEPHENS, Associate Justice, dissenting.

This case is before the court by virtue of an order granting a petition for a special appeal. The ruling below complained of was the denial of a motion that a previous motion, which sought modification pendente lite of a pendente lite custody order, be not referred to the Domestic Relations Commissioner for investigation and report. More simply stated, the ruling complained of was the overruling of an objection to the reference. In granting the special appeal we limited it "to the single question covered by point 6 of the petition" which was:

Legality of District Court Rule No. 15 (9) establishing Domestic Relations Commissioner and blanket rule of Court referring to said Commissioner for investigation and written report, all cases involving determination of the question of temporary custody of a child or of the question of the amount of temporary maintenance for a wife or child.

The contention of the appellant under this point is that the Rule is invalid and therefore the order of reference was erroneous.

I think the appeal was properly allowed, that the appellant is in a position to complain, and that the order of reference should be reversed because of the invalidity of Rule No. 15 (9) on which it was based.

As a result of the order of reference the Domestic Relations Commissioner will, under the requirement of the Rule, investigate the matters bearing upon the question of modification of the custody order. In doing so it is to be assumed that he will ascertain the present living conditions of the child, the conditions under which the child will live if the custody order is modified, the habits and character of the husband and wife, and their several capacities to care for the child. The investigation of the Commissioner will be embodied in a written report filed in the case. While it is true that under the Rule he has no power to subpoena the appellant and subject him to questions, it is obvious that the Commissioner cannot perform his duty properly without in some manner inquiring of the parties and their relatives and associates in respect of the private affairs of the parties in the respects above commented upon.

I think there is no lack of power in this court, in view of the discretion given by the statute providing for special appeals, to allow such appeals and to determine the questions presented therein when the determination will prevent the subjecting of a petitioner for appeal to trouble which will be occasioned if reversal of an assertedly erroneous ruling below is not made. The statute (D.C.Code (1940) § 17—101), after providing for appeals as a matter of right from final orders of the District Court and from certain types of interlocutory orders, permits appeals from "any other interlocutory order, in the discretion of the said United States Court of Appeals . . . whenever it is made to appear to said court upon petition that it will be in the interest of justice to allow such appeal." Under this statute we allow special appeals where, for example, there has been a denial below of a motion to quash service of summons. We do this on the theory that if such a ruling below adverse to the petitioner is erroneous and is nevertheless allowed to stand without reversal the petitioner will be subjected to the unnecessary trouble of a trial. Mitchell Mining Co. v. Emig, 1910, 35 App.D.C. 527; New York Continental Jewell Filtration Company v. Karr, 1908, 31 App.D.C. 459, affirmed 1912, 223 U.S. 253, 32 S.Ct. 300, 56 L.Ed. 426. See also Parish v. Hedges, 1909, 34 App.D.C. 21, where we allowed a special appeal from an order of the District Court in probate vacating an order approving the final account of an executrix. We allowed the appeal in that case because if the order complained of was erroneous and was allowed to stand the executrix would be subjected to unnecessary litigation as well as to enlargement of her bond. So in the instant case if the Rule of the District Court appointing a Domestic Relations Commissioner and authorizing his investigation of custody cases is invalid for lack of power in the court to promulgate it, and if the ruling adverse to the appellant which permits the investigation to go forward is therefore erroneous but nevertheless stands unreversed, the appellant will be subjected without warrant of law to the inquisition above described. In addition it is of importance that the trial court be advised in respect of the validity of the Rule. I therefore agree that it is quite within the power

of this court under the broad terms of the statute to allow the appeal.

In my opinion District Court Rule No. 15 (9) is invalid. I do not think it can be justified either by the statute upon which it is said to be rested, or under Rule 16 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing for pre-trial procedure, or under Rule 53 providing for the appointment of masters, or under the inherent powers of the court.

The statute (D.C.Code (1940) § 11—312) permits the District Court to "establish written rules regulating pleading, practice and procedure, and by said rules [to] make such modifications in the forms of pleading and methods of practice and procedure prescribed by existing law as may be deemed necessary or desirable to render more simple, effective, inexpensive, and expeditious the remedy in all suits, actions and proceedings. . . ." This statute does not in terms authorize the appointment of an investigating official and I think it cannot be said impliedly to do so. The words of the statute must be read in the context of the usual powers of courts. So read I think they cannot be said to justify the appointment of a clerical official authorized to make informal investigations of fact and reports in a manner limited only by the official's personal discretion and without opportunity to persons investigated to be heard under oath or to subject adverse witnesses to oath and cross-examination. In the Anglo-American governmental system courts, as distinguished from executive agencies, have not been endowed with investigative powers. Their proceedings have been adversary and open to the parties and the public. Even if it can be

demonstrated, as I think it cannot, that an informal investigation, carried on without examining witnesses under oath and without opportunity for cross-examination, is more accurate and expeditious and more conducive to the protection of the interest of the state in the welfare of the child than the public adversary method of courts, in which not only the parties may present their respective cases through witnesses and documents and cross-examination, but in which also the judge himself may in the interest of the child call witnesses, and in which the dependability of the evidence is tested by oath and by the judgment of a judge rather than by that of a clerical official, still the asserted advantages of the investigatory method cannot be the source of power of a court to use such a method. Assuming that a trial court ought to have such power, it is a *non sequitur* to say that therefore it has it. [1]

The Commissioner's investigation cannot, I think, be justified as a form of pre-trial procedure. Such procedure under Rule 16 of the Federal Rules of Civil Procedure is to be carried out by the court itself in the presence of the parties or their counsel. Rule 16 authorizes no proceeding by a clerk or deputy clerk of an investigatory character.

In my opinion the investigation cannot be justified under Rule 53, providing for the appointment of masters. Under Rule 53 a master is required to set a time and place for his proceeding and to notify the parties thereof and the proceeding is to be carried on in adversary manner by putting witnesses on oath, calling the parties and examining them upon oath, requiring the production of evidence, ruling upon the ad-

---

[1] The virtue of the investigatory method is in its freedom and lack of cumbersomeness. An essential defect in the method, in addition to its secrecy, is that it usually commences with, or soon proceeds under, an hypothesis formulated by the investigator and ends with conclusions which proceed from evidence which has been selected because of its relevance to that hypothesis alone. In consequence the results of an investigation are not likely to be comprehensive and accurate. It is well known that even scientific research is subject to the single hypothesis defect of the investigatory method. The discovery of scientific truth is seldom accurately accomplished through a single research project. Only when the results thereof have been tested by the work of a different investigator proceeding under a modified or contrary hypothesis is dependability reached. In short, even science itself must have ultimate recourse to the adversary method.

The virtue of the adversary method in judicial proceedings is that it is open, that it rigidly tests the dependability of evidence by oath, by cross-examination, and by scrutiny of a judge trained in the determination of facts. The adversary method moreover proceeds upon the hypothesis of more than one person, i. e., upon the hypothesis of each of the parties. The defect of the adversary method is in its cumbersomeness. This is far outweighed by its advantages.

missibility of evidence, and making, upon request of a party, a record of the evidence offered and excluded.

I think the appointment of the Domestic Relations Commissioner and the authorization of his investigation and report cannot be supported as within the inherent power of a court of equity to appoint an auditor. Such an officer also must conduct his proceedings as adversary proceedings. Ex parte Peterson, 1919, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919, relied upon by the appellee as justifying the appointment of the Commissioner as within the inherent power of the District Court, lends no support to the appellee's contention. Examination of that case discloses that the auditor's hearing held therein was adversary in character.

I think the Rule is invalid in delegating to a clerk the duty of a judge. Under the Rule when the parties consent the Commissioner's report may be accepted and acted upon by the judge although the judge himself has never seen or heard the persons upon whose words the Commissioner has relied in formulating his report or the husband or wife or other person who is to have custody of the child. I think our system of jurisprudence contemplates that the important question of the custody of a child—even temporary custody—shall be determined only according to the judgment of a judge as to the facts bearing upon the question of custody. Consent of parties cannot warrant delegation of judicial duty to a non-judicial officer. Parties can no more by consent relieve a judge of his duty than they can by consent confer jurisdiction upon him.

Rule 15 (9) is invalidated also I think by the blanket character of the reference provision. In Los Angeles Brush Corporation v. James, 1927, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481, two patent cases were referred to a "standing master" by a judge of the District Court of the United States for the Southern District of California over the objection of the defendant in each case. The "standing master" had been appointed by the court to try patent cases and substantially all such cases were to be referred to him. On original application for leave to file a petition for mandamus the Supreme Court held that the reference was improper. The Court referred to Equity Rule 46, 28 U.S.C.A. § 723 appendix, then in force, requiring the testimony of witnesses to be taken orally in open court and requiring the court to pass on the admissibility of evidence, and to Equity Rule 59 providing that save in matters of accounting reference to a master should be the exception and not the rule and should be made only upon a showing that some exceptional condition requires it. For a similar ruling see also McCullough v. Cosgrave, 1940, 309 U.S. 634, 60 S.Ct. 703, 84 L.Ed. 992. Rule 53 (b) of the present Federal Rules of Civil Procedure provides that a reference to a master shall be the exception and not the rule. It is to be noted further that the reference in Los Angeles Brush Corporation v. James was to a master authorized to accomplish a full hearing in all matters of fact and law. If blanket reference to a master so empowered is invalid, *a fortiori* blanket reference to a clerical official whose investigation is of the type prescribed in Rule 15 (9) is invalid.

The Rule appointing the Domestic Relations Commissioner and authorizing his investigation is undoubtedly a response to the burden of work on the trial court. That burden I do not minimize. But I think that response to the burden should be in the form of application to the Congress for additional judges or additional authorized facilities, not in delegating the work of judges to lay officials. Courts will cease to possess the virtue of courts if they have resort to such expedients.

In accordance with the foregoing I think the ruling of the trial court referring the custody question to the Domestic Relations Commissioner should be reversed.